[Crim. No. 11260.   Second Dist., Div. Four.   May 31, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. ARTHUR BERTRAM CHAMBERLIN, Defendant and Appellant.

Arthur B. Chamberlin, in pro. per., and Maxwell S. Keith for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip M. Rosten, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—After a court trial—in which the case was submitted upon the testimony contained in the preliminary hearing transcript and the stipulated-to testimony of one

further prosecution witness—defendant was found guilty of the charge of soliciting an abortion in violation of Penal Code section 276. He was denied probation and was sentenced to state prison. The appeal is from the judgment of conviction.

Pursuant to instructions from her superiors, Jetta Pinnell, a Long Beach policewoman, accompanied by Officer Wayne Greer, went to Poor Bob's Bar in Long Beach where they were told they would find a person known as Doc Chamberlin (defendant). The officers were both in plainclothes. When they entered the bar at 7:30 p.m. they recognized defendant sitting with a group of people at one of the tables. The officers sat down at the bar. About five minutes later defendant approached them and asked Officer Greer if he was "Wayne." Defendant introduced himself as "Doc." He then asked Greer whether "Nancy had given him the scoop." Greer replied that he had received no details and wanted to talk further about "the problem." Officer Pinnell said she was quite nervous about it. Defendant told her that he had performed many of these "operations" and that there was nothing to worry about. When Officer Pinnell said she was in a "terrible mess," defendant said, "How far pregnant are you?" She replied, "a little over two months." Greer asked defendant how much he charged for his services, and defendant said $400. When asked whether a retainer was necessary defendant said, he did want a retainer because he "didn't like dry runs." In response to further questioning defendant stated that he would perform the abortion at a certain hotel in Tijuana, Mexico. He then stated that, on one occasion he had had eight abortions lined up for one day and none showed up after he had made the long trip down there, and for this reason he definitely wanted a retainer. After discussing with the officers the operating procedures which he would employ— indicating that he would perform a D and C and give Pinnell sodium pentathol to put her to sleep—he gave them a card with the name of the hotel where he said he would perform the operation, and stated he could be reached there at 9 o'clock. Defendant refused to take the retainer in the bar. He stated that "he couldn't be too careful"; he had heard about a fellow like himself who was picked up by the police. He told them that when they finished their drinks he would go out to the car with them. As suggested, they walked to where Officer Greer's car was parked and got inside. Officer Pinnell then asked defendant how much he wished her to give him as the retainer. Defendant said $100. Pinnell gave him the money in

20-dollar bills. Defendant counted it and put it into his pocket. At this point other officers arrived and defendant was arrested.

Early the next morning following defendant's arrest, Officer Frank Welsh obtained a search warrant to search defendant's automobile. Inside the automobile, which was discovered parked near the bar where defendant was arrested, the officer found various bottles and medical instruments. Many of the items found are used in performing abortions.

Defendant contends that his constitutional rights were violated because of the "slipshod" manner in which he was represented below. In this respect, he argues that the testimony of the chief prosecution witness, Policewoman Pinnell, "cried out for cross-examination"; that from her testimony it was obvious the alleged transaction was prearranged, it being readily inferable the "entire scheme culminating in defendant's arrest" was engineered by the Long Beach Police Department; but that, instead of developing the obvious defense of entrapment, defendant's trial counsel elected to submit the case on the transcript of the preliminary hearing. As a consequence, it is maintained, defendant's trial was reduced to a "farce or a sham" within the meaning of the rule stated in *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal. Rptr. 863, 386 P.2d 487]. For reasons hereafter discussed, we find this contention to be unsound.

The record shows that defendant's trial counsel (who is not his counsel on this appeal) was fully aware of the law relative to the defense of entrapment. At the time of the submission of the case counsel requested the court to consider the issue of entrapment as a defense to the crime charged. No showing is made that defense counsel's failure to explore this issue more fully in any way prejudiced defendant's defense. Defendant argues that the prosecution witnesses, Pinnell and Greer, should have been called and cross-examined concerning what appeared from the testimony of Pinnell in the preliminary hearing transcript to be a prearranged meeting with defendant which, it could be inferred, was arranged by the police department. However, there is nothing in the record to suggest that further inquiry on the subject would have helped establish entrapment. On the contrary, such cross-examination might well have disposed of the defense altogether. As defendant's counsel on appeal candidly acknowledges, "A practitioner cannot be considered skilled in the art of cross-examination until he knows when not to." An attorney is of course

presumed to be faithful to the best interests of his client. (*People* v. *Lyons*, 204 Cal.App.2d 364, 368 [22 Cal.Rptr. 327].) ■ In the absence of evidence showing otherwise, we must presume that if evidence damaging to the state's case could have been elicited by cross-examination, defense counsel would not have submitted the case as he did. ■ As the court said in *People* v. *Gutkowsky*, 219 Cal.App.2d 223, 226 [33 Cal.Rptr. 79], ". . . the strategy of a trial or preliminary hearing must be determined by the attorney, not the client. [Citation.]" (See also *People* v. *Brooks*, 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383].)

Defendant asserts that the court committed reversible error in failing to state for the record that it had read and considered the transcript of the preliminary hearing. ■ The court of course had the duty to read the transcript as the case was submitted on it. (*People* v. *Krough*, 232 Cal.App.2d 150, 151-152 [42 Cal.Rptr. 614].) However, there is nothing to indicate this duty was not performed. ■ Official duty is presumed to have been duly performed. (Code Civ. Proc., § 1963, subd. 15.) Absent an affirmative showing that a court neglected to perform its duty to read a preliminary hearing transcript where the case is submitted on that transcript (as is shown in *People* v. *Krough, supra*), the above stated presumption is not rebutted. (*People* v. *Heath*, 131 Cal.App.2d 172 [280 P.2d 70].)

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 27, 1966.